Sam E. SPRINKLE, Claimant-Respondent,

v.

DAVIS–NOLAND–MERRILL GRAIN COM-
PANY, employer, United States Fidelity
and Guaranty Company, insurers, Appel-
lants.

No. 23467.

Kansas City Court of Appeals.

Missouri.

Feb. 5, 1962.

Michael J. Bogutski, Kansas City, for ap-
pellants.

Stephen J. Millett, Kansas City, for re-
spondent.

SPERRY, Commissioner.

This appeal is from a judgment of the
Circuit Court affirming an award of the
Industrial Commission in the amount of
$2800, in favor of Sam E. Sprinkle, em-
ployee, who will be referred to as plaintiff,
against Davis-Noland-Merrill Grain Com-
pany, a corporation, employer. Both the
employer and its insurer, U. S. Fidelity &
Guaranty Company, appealed. We will re-
fer to employer as defendant.

Defendant is exclusively engaged in the
business of agriculture and, in 1957, had
a total of more than 40 agricultural em-
ployees not covered by the Workmen's
Compensation Act.

It owns and operates a 33000 acre ranch
in Kansas, where Mr. Liggenstoffer is man-
ager at a salary of $250 per month, plus
other emoluments. This is, primarily, a
cattle operation with 1500 acres of farm
land involved. From four to six laborers
are regularly employed, and are supervised
by the manager, who works with them in
various operations.

It owns two other ranches in Kansas,
totaling some 16400 acres, which were oper-

ated as one unit. Mr. Howard had supervision of that operation and received $300 per month salary, plus other emoluments. He had several ranch hands under his supervision.

In Carroll county, Missouri, it owns and operates 3300 acres of Missouri river bottom land. Mr. Parsons is manager, at a salary of $400 per month. He is also furnished a house, lights, milk, and the equivalent of two meat hogs per year. Several farm laborers are regularly employed in this operation. Mr. Parsons oversees and directs activities but, in addition, he also works beside them in the performances of various farm operations.

All of the above mentioned managers received a bonus in 1956 by reason of the previous year being a profitable one.

Defendant maintains an office in Kansas City, Missouri, where it employed seven people at the time the accident occurred. In 1956, and in January, February and March, of 1957, they had an additional employee in the office.

Plaintiff's testimony was to the effect that he had been a bulldozer operator for 29 years; that he had worked for various contractors who owned bulldozers and hired operators for them; that he worked as such an operator for people engaged in building farm ponds, levees, and terraces, as well as for construction firms, on roads and in quarries; that he had never worked as a farm laborer; that he was a dues paying member of the hoisting engineers labor union; that he had, prior to May, 1957, sustained a serious injury which made it difficult, if not impossible, for him to operate a bulldozer in heavy construction work or for long hours; that operating bulldozers and combines was all that he could do; that, for two years immediately prior to May, 1957, he had worked for Mr. Sowers, a contractor who owned more than one dozer and other machinery, as a bulldozer operator, building farm ponds, and in rock quarries, etc; that he received the "going wage" of $2 per hour; that the hours were too

long, the work too much, and that he terminated such employment; that occasionally he operated a combine in custom work, those being the only two pieces of machinery that he could operate; that a week or so after terminating with Sowers, defendant's manager of the Carroll county farm asked him if he would work there as a bulldozer operator; that he agreed to work as a bulldozer operator, nothing else, at $1.50 per hour, for a short time but not for too long hours; that he could not stand too much strain and tension; that he went to work on May 1, 1957, and was so employed thereafter for 10 hours per day when weather permitted; that, on May 29, he was removing brush and trees, and levelling land that had overflowed, preparing it for agricultural uses; that, while so engaged, a willow tree struck him on his head and body, seriously injuring him. Since no question is presented as to the nature of his injuries, it is not necessary to further comment thereon.

Mr. Kleitz, a dirt moving contractor, testified for plaintiff. He stated that he owned five Caterpillar tractor-dozers and other motorized equipment; that he used them in farm and road work; that he paid operators $3.50 per hour; that he employed only skilled labor, no farm labor, because the equipment is too expensive; that a D7 machine costs $27000 (plaintiff was operating a D6) : that farmers, generally, do not own bulldozers; that a farm laborer and a bulldozer operator are two different people, doing different kinds of work.

Witness Jackson stated that he was business representative for Operating Engineers Union, Local 101, with members in Carroll and neighboring counties; that contractors in that area employ the union's members; that such contractors do bulldozer work on farms in that community; that few farmers own bulldozers but contract their work to others engaged in the business of operating bulldozers; that, because of plaintiff's physical condition prior to this injury, he would not be employable by contractors at the union scale of wages;

that plaintiff's union dues are paid up, that he is in good standing and, so far as witness knows, has never been suspended for non-payment of dues; that he would have been suspended had he not kept his dues current.

There was testimony for defendant to the effect that plaintiff was employed to operate a bulldozer and, later, a combine; that he was regarded as a farm hand; that, if he worked 10 hours a day, earning $15.00, he would be paid more than was paid to farm and ranch hands. There was also testimony to the effect that its three "farm managers" were, in fact, farm laborers; that, while they laid out and supervised the work of the men under their respective control and kept and made reports on their respective operations, they also performed ordinary farm ranch labor, assisting the hands.

The evidence tended to establish that the managers hired such labor as was needed from time to time, directed the activities of the men employed under them, received higher wages or salaries than did those working under their supervision, had charge of sending to market the produce of the farm and ranches, kept accounts and records thereon, forwarded to defendant such reports as were required by it and, in addition to other emoluments, they received bonuses for their services.

The commission found that Mr. Liggenstoffer, Mr. Howard, and Mr. Parsons were not farm laborers but were farm managers and were covered by the Workmen's Compensation Act; that they were employed in a managerial capacity; that such ordinary farm labor as they did was "merely incidental or ancillary to their principal managerial duties"; that the term "farm labor", as used in the compensation law, must be given its usual, customary meaning, citing Dost v. Pevely Dairy Company (Mo.), 273 S.W.2d 242, 244. The Court there pointed out that the term "agricultural labor" is broader than the term "farm labor", and that only farm labor is excluded from the operation of the act;

that other agricultural labor is under its coverage.

In Blew v. Conner (Mo.), 328 S.W.2d 626, 629 (Oct. 1959) the court held that the "farm manager" in that case was a "farm laborer". However, one man only was regularly employed on the farm to perform farm labor. The other five employees engaged in erecting a barn, (being assisted by the one regular farm employee) were carpenters, not farm laborers. The facts in that case are so dissimilar to those here that the ruling, in that respect, is not controlling here.

The commission could, under the evidence, have found the facts to be as it did in this regard. These men were not farm laborers although they were employed in agriculture. The commission properly found them to be subject to the operation of the Missouri Workmen's Compensation Act. With the seven regular employees in its office and the three farm managers, it had 10 employees regularly employed. The commission also found that plaintiff was within the coverage of the act. If so, then defendant was a major employer under the provisions of section 287.050 RSMo 1959, V.A.M.S. which defines a major employer as "an employer who has more then ten employees regularly employed".

The commission also found that plaintiff was a bulldozer operator, not a farm laborer, and was within the coverage afforded by the act. It could have reasonably reached that conclusion and made that finding based on the evidence in the whole record. Blew v. Conner (Mo.), 328 S.W.2d 626, 629.

It found, (and it is virtually conceded by defendant) that, at the time the accident occurred, it had seven regular employees in its office in Kansas City, Missouri, engaged in its business and covered by the act. That finding is fully supported by the record.

There was substantial evidence to the effect that defendant, at the time plain-

tiff sustained his injuries, had more than 10 employees who were subject to the coverage provided by the Workmen's Compensation Act. In arriving at that figure we are not counting any of the numerous other agriculture employees, who were farm laborers. It is not necessary to determine whether or not Virgie Reed, who was regularly employed by the month as a cook for the ranch hands on one of the Kansas ranches, was covered by the act, as was determined by the commission.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court.

All concur.